Samuel KAUFMAN, Plaintiff,

v.

William ALBIN, et al, Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted March 26, 1982.
Decided May 11, 1982.

Joseph A. Rosenthal, Morris & Rosenthal, P. A., Wilmington, and Bertram Bronzaft, Garwin, Bronzaft & Gerstein, New York City, for plaintiff.

William T. Allen, Lewis S. Black, Jr., and David A. Jenkins, Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Philip A. Hunt Chemical Corp.

Jack B. Jacobs, and Bruce M. Stargatt, Young, Conaway, Stargatt & Taylor, Wilmington, and Philip L. Graham, Jr., and William Lucas, Sullivan & Cromwell, New York City, for defendants.

HARTNETT, Vice Chancellor.

The defendants filed motions to dismiss this stockholder derivative suit on several grounds, most of which arose from the claim that the Delaware corporate directors consent to substituted service of process statute did not permit valid service of process in this case. The contentions are all without merit and the motions must be denied.

I

As is required in considering a motion to dismiss, all well-pleaded allegations must be accepted as true; *Danby v. Osteopathic Hospital Ass'n of Del.*, Del.Ch., 101 A.2d 308 (1953), *aff'd.*, Del.Supr., 104 A.2d 903 (1954); *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168 (1976); in order to determine whether plaintiff might recover under any reasonably conceivable set of circumstances sus-

**762**

ceptible of proof. *Klein v. Sunbeam Corp.,* Del.Supr., 94 A.2d 385 (1952).

The well-plead facts are: On August 22, 1977 the Board of Directors of Philip A. Hunt Chemical Corporation ("Hunt") reviewed the terms of a proposed tender offer for the shares of stock of Hunt made by Turner & Newell Industries, Inc. ("Turner"). The Board determined that the offered price was fair and voted unanimously to recommend to all stockholders of Hunt that they accept the offer and tender their shares to Turner. At this same meeting, the Board also considered the ramifications of the proposed tender offer on certain unexercised stock options held by Hunt employees, some of whom were officers, and resolved to accelerate the exercise date of all options held by employees. However, in order to avoid any potential "short-swing profit" charge, the options held by officers were given a different treatment. In consideration for the cancellation of these options, the officer-optionees were to receive the difference between the option price held on their options and the $20 tender offer price.

Plaintiff contends that the individual defendant-directors wasted the corporation's assets by improperly permitting the officer-optionees to surrender their options in connection with the tender offer.

The resolutions which the Board enacted on August 22, 1977 were contingent upon the actual commencement by Turner of the proposed tender offer and also upon its consummation in compliance with the terms set by Turner. Section 6 of Turner's Office to Purchase listed a number of conditions which, if brought to fruition, could cause the tender offer to abort. Additionally, it was provided that if less than 2,950,000 shares (52% of the outstanding shares) were tendered, Turner could refuse to consummate the tender offer. The tender offer was made by Turner to the stockholders of Hunt commencing on September 12, 1977 and ending on October 3, 1977.

The tender offer was successfully consummated on October 3, 1977 when 98% of the outstanding shares were tendered and Turner purchased 53.7% of the shares tendered. On that date the options belonging to Hunt's various officers were cancelled in accordance with the August 22, 1977 resolutions of the Board.

## II

The first grounds argued in favor of defendants' motion to dismiss is that service of process was improperly obtained over the individual defendants pursuant to 10 *Del.C.* § 3114 (the directors implied consent to substituted service of process statute).

10 *Del.C.* § 3114 states in part:

"§ 3114. Service of process on nonresident directors, trustees or members of the governing body of Delaware corporations.

(a) Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes his residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as his agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity, whether or not he continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member

within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable. . . ." [1]

This section was enacted by 61 *Del.Laws*, Ch. 119 which provided: "This act shall apply only to causes of action arising or accruing subsequent to the effective date of this act," which was September 1, 1977.

Plaintiff concedes that 10 *Del.C.* § 3114 does not provide a means for service of process on three former directors of Hunt who were elected prior to September 1, 1977 and who resigned on October 6, 1977, because the statute by its terms is only effective as to nonresident directors who were elected after September 1, 1977 or who served as directors after June 30, 1978. Therefore, plaintiff has agreed to dismiss the complaint as to defendants Albin, Towbin and Waldron.

### III

The primary issue remaining is whether this cause of action arose or accrued after September 1, 1977—the effective date of 10 *Del.C.* § 3114. The individual defendants contend that the alleged corporate wrong took place on August 22, 1977, the date of the adoption of the resolutions by Hunt's directors; that on that date the cause of action arose or accrued; and consequently service of process on the nonresident directors could not be accomplished pursuant to 10 *Del.C.* § 3114. It is conceded that the individual defendants are not amenable to service of process except pursuant to the provisions of that statute. According to the defendants, there was nothing more to be done by them after August 22, 1977, except to perform the ministerial act of receiving and cancelling the options, which had no real effect on the transaction, and therefore this cause of action arose or accrued on August 22, 1977, which was before 10 *Del.C.* § 3114 became effective.

Plaintiff counters by pointing out that, due to the existence of conditions depend-ent upon subsequent acts of Hunt and Turner, the alleged wrong did not occur until October 3, 1977, the date the tender offer ended, and there could be no accrual of a cause of action until that date.

▮ No case squarely on point has been cited. The defendants, however, rely heavily on *Elster v. American Airlines*, Del.Ch., 100 A.2d 219 (1953), a case brought to cancel certain options, for the proposition that the alleged wrong occurred on August 22, 1977—the date of the adoption of the resolution. *Elster*, however, is distinguishable from the present case because in *Elster* the option or contract rights were fixed and finally established at the time the options were granted. In the present case the cancellation of already existing options was subject to a number of contingencies including the acceptance of the tender offer by a large number of shareholders.

I must therefore look to the general principles of law relating to the question of when a cause of action arises or accrues.

In 54 C.J.S., *Limitation of Actions* § 110 (p. 15) (1948), it is stated:

"Where a party's right depends on the happening of an event in the future, the cause of action accrues, and the statute of limitations begins to run, only at the time when the event happens."

In 51 Am.Jur.2d, *Limitation of Actions* § 127 (pp. 3 & 6) (1970), it is stated:

"If a right of action depends upon some contingency or a condition precedent, the cause of action does not accrue and the statute of limitations does not begin to run until that contingency occurs or the conditions precedent is complied with."

After August 22, 1977 the tender offer still had to be commenced and Hunt's stockholders had to be advised that the directors of Hunt recommended that the tender offer be accepted. This was done on September 12, 1977. Turner also had available many options which would have enabled it to terminate the tender offer if certain events took place before October 3, 1977.

---

1. The constitutionality of this statute was upheld in *Armstrong v. Pomerance*, Del.Supr., 423 A.2d 174 (1980).

Even more importantly, the tender offer was contingent upon it being accepted by the tendering of at least 52% of the outstanding shares of Hunt stock.

In Folk, *The Delaware General Corporation Law*, 487 (1967) it is stated:

"Accordingly, the circumstances of the case will determine whether the transaction is executed or continuing. If the action complained of requires stockholder approval, the transaction is not considered complete until the stockholders have approved it."

In *Lavine v. Gulf Coast Leaseholds*, Del. Ch., 122 A.2d 550 (1956) it was held that where exchanges of stock are contingent upon shareholder approval, the transaction is not completed until the shareholder vote takes place. In the present case, there was no shareholder vote denominated as such, but the acceptance of the tender offer by the tendering of the requisite number of shares was, for all practical purposes, the same as a vote by the stockholders of Hunt because, until the shareholders tendered the required number of shares (which was over 50% of all the outstanding shares) the transaction was subject to extinction.

I therefore find that the transaction which is the subject of this suit commenced with the adoption of the two resolutions on August 22, 1977 but was not consummated until October 3, 1977. The alleged wrong was therefore a continuing wrong and any cause of action attacking it arose or accrued after September 1, 1977, the effective date of 10 *Del.C.* § 3114.

## IV

The individual defendants also argue that they had no notice, prior to the effective date of 10 *Del.C.* § 3114, on September 1, 1977, that they could be hailed into a Delaware Court to defend the actions which took place on August 22, 1977, and therefore their constitutional rights of due process were violated. They cite *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *Armstrong v. Pomerance*, Del.Supr., 423 A.2d 174 (1980). And, they argue that the doctrine of due process precludes any retrospective application of 10 *Del.C.* § 3114.

The individual defendants base their argument of a violation of their right of due process on the assumption that, following the August 22, 1977, resolutions, nothing more was needed to be done to consummate the transaction. This was, however, not the case, as defendants well knew, the tender offer still had to be commenced, the stockholders had to be informed of the recommendation of the directors of Hunt that it be accepted, at least 52% of the shareholders of Hunt had to accept the tender offer and various other conditions set by Turner had to be met. The tender offer was not commenced until September 12, 1977, at which time the shareholders of Hunt were first informed of the tender offer, of the proposed treatment of the stock options, and that the directors of Hunt recommended acceptance of the tender offer. The transaction was not completed until October 3, 1977.

The notification of Hunt's stockholders occurred on September 12, 1977, and the tender offer was completed on October 3, 1977, both of which dates were after September 1, 1977, the effective date of 10 *Del.C.* § 3114, and therefore there was no retroactive application of 10 *Del.C.* § 3114 or lack of due process.

## V

Defendants also argue that certain officers who were not directors but were also optionees and who, it is conceded, are immune from service of process under Delaware law, are indispensable parties to this litigation because rescission of their option contracts is requested. Plaintiff, however, has agreed to amend the complaint to delete as defendants all the officers who were optionees, with the exception of Messrs. Bonniwell and Belmont who were also directors.

Defendant-Hunt has also moved to dismiss the complaint on grounds that plaintiff's failure to make a demand upon the Board of Directors of Hunt prior to the

instigation of this action cannot be legally excused under the circumstances existing when the suit was filed. Hunt points out that Chancery Court Rule 23.1 requires that the complaint allege "with particularity" any efforts a plaintiff has made in order to have the Board of Directors instigate an action and to also specifically plead any reasons for failure to make such a demand.

Plaintiff, while sharply disputing Hunt's allegation that the complaint lacks adequate specificity, has nevertheless offered to amend the complaint in order to meet Hunt's arguments. I therefore decline to grant a dismissal for failure to comply with Rule 23.1 at this time and grant plaintiff leave to amend the complaint so as to plead with more specificity the alleged futility of making a demand on Hunt's Board of Directors.

The individual defendants' motion to dismiss is therefore denied. Hunt's motion to dismiss is also denied conditioned upon the plaintiff's amendment of the complaint in order to more fully comply with Chancery Court Rule 23.1. The complaint should also be amended to exclude as defendants the three former directors who resigned on October 6, 1977, the officers of Hunt who are not directors and also the unnamed officers of Hunt who were originally designated as defendants.